UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSSEX FINANCIAL ENTERPRISES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BAYERISCHE HYPO-UND VEREINSBANK AG, a/k/a HYPOVEREINSBANK; HVB RISK MANAGEMENT PRODUCTS, INC.; HVB U.S. FINANCE, INC., f/k/a HVB STRUCTURED FINANCE, INC.; and DOES 1-100, inclusive, <br><br> Defendants. | Case No. 08-4791 SC <br><br> ORDER GRANTING MOTION <u>TO DISMISS</u> |

**I.  INTRODUCTION**

In this matter, Plaintiff Sussex Financial Enterprises, Inc. ("Sussex"), alleges that Defendants Bayerische Hypo-Und Vereinsbank AG, et al. (collectively, "HVB") committed fraud in connection with the promotion and execution of a tax shelter scheme, and that HVB further violated the Racketeer Influenced and Corrupt Organizations Act ("RICO").  <u>See</u> First Amended Complaint ("FAC"), Docket No. 48.  This matter comes before the Court on the Motion to Dismiss Plaintiff's RICO Claim or, in the Alternative, to Strike ("Motion") filed by HVB.  Docket No. 49.  Sussex has filed an Opposition, and HVB filed a Reply.  Docket Nos. 56, 59.

Sussex also filed a Sur Reply.[1]  Docket No. 61.  Having considered all of the pleadings submitted by both parties, the Court GRANTS HVB's Motion.  Sussex's RICO claim is DISMISSED WITH LEAVE TO AMEND.

## II. BACKGROUND

According to the FAC, this action concerns a finance program known as Custom Adjustable Rate Debt transactions, or "CARDS." FAC ¶ 6.  Under the program, HVB issued loans to limited liability companies set up for the purpose of receiving these loans, and clients of Sussex subsequently became jointly and severally liable on the loans in return for receiving fifteen percent of the loan amount.[2]  Id.  Sussex's clients paid it investment banking fees for the CARDS transactions, and Sussex paid HVB loan origination fees.  Id.  Participation in the transactions was supposed to result in tax benefits for the clients.  Id. ¶ 9.  In order for the clients to receive those tax benefits, the loans were supposed to be set up and funded in separate accounts in the year in which the loans were made, and all parties to the loans had to have the intent of renewing the loans for thirty years.  Id. ¶¶ 11, 15.  In spite of the purported long-term nature of the loans, HVB had the

---

[1] In a letter attached to the Sur Reply, Sussex submitted a request for permission to file the Sur Reply.  Docket No. 60.  The Court hereby GRANTS this request.  HVB's Motion to Strike Plaintiff's Sur Reply, Docket No. 63, is DENIED.

[2] Sussex Financial Enterprises, Inc., was formerly known as Chenery Associates, Inc.  Compl. ¶ 3.  For the sake of simplicity, the Court will refer to the entity as "Sussex" throughout this Order.

1  right to not renew the loans at the end of each reset period
2  (which lasted approximately one year), thereby recalling the
3  entire balance of the loan, as long as it had a legitimate
4  business reason for doing so.  Id. ¶¶ 12-13.
5     HVB did not renew some of the loans after the first reset
6  period.  Id. ¶ 18.  In fact, HVB never possessed the requisite
7  intent to allow the loans to remain in effect for thirty years,
8  thereby rendering the purported tax benefits associated with the
9  loans inapplicable.  Id. ¶ 23.  In addition, Sussex claims that
10 HVB failed to set up the loans in separate accounts in the year in
11 which they were made, and falsely represented that they had done
12 so.  Id. ¶¶ 16-17.  Sussex claims that it learned of these false
13 representations when HVB entered into a Deferred Prosecution
14 Agreement with the U.S. Department of Justice on February 14,
15 2006.  Id. ¶¶ 17, 23; see also Docket No. 46 Ex. A ("DPA").
16    In the DPA, HVB stated that:

> HVB admits and accepts that . . . through the conduct of certain HVB employees, during the period from 1996 through 2003 HVB assisted high net worth United States citizens to evade United States individual income taxes on over $1.8 billion in capital gain and ordinary income by participating in and implementing fraudulent tax shelter transactions, including . . . CARDS . . . . HVB personnel engaged in conduct that was unlawful and fraudulent, including: (i) agreeing to participate in fraudulent tax shelter transactions; and (ii) preparing and signing false and fraudulent factual recitations, representations, and documents as part of the documentation underlying the shelters.

25 DPA ¶ 2.
26    In the "Statement of Admitted Facts" that was attached to the
27 DPA, HVB stated that CARDS involved "loans with a purported 30-

3

year term, when all parties involved, including the clients/'borrowers,' knew that the transactions would be unwound in approximately one year in order to generate the phony tax benefits sought by the client participants." DPA Ex. A ¶ 19.

By way of background, the Court notes that the CARDS scheme has been the subject of a number of lawsuits against HVB. See Rezner v. Bayerische Hypo-Und Vereinsbank AG, No. 06-2064 (N.D. Cal. May 15, 2009) (order granting consent judgment); Gustashaw v. Bayerische Hypo-Und Vereinsbank AG, No. 08-3479 (N.D. Cal. May 5, 2009) (order denying motion to dismiss); Curtis Inv. Co., LLC v. Bayerische Hypo-Und Vereinsbank AG, No. 06-2752, 2007 U.S. Dist. LEXIS 94012 (N.D. Ga. Dec. 20, 2007), aff'd per curiam, No. 14401, 2009 U.S. App. LEXIS 17469 (11th Cir. Aug. 5, 2009) (order granting motion to dismiss). Complaints in some of these cases have also implicated Sussex in the fraudulent CARDS scheme. See, e.g., Compl. ¶ 15, Gustashaw, No. 08-3479, Docket No. 1 (July 18, 2008). As the Eleventh Circuit has recently noted, "[t]he IRS said that unwinding the transaction after only one year was a part of a plan that was well-understood by all of the participants." Curtis, 2009 U.S. App. LEXIS 17469 at *6-7. However, the current suit addresses only the alleged fraud committed by HVB as to Sussex, and the only issues now before the Court are those raised by the FAC.[3]

Sussex contends that HVB's intention to recall the loan after

---

[3] In particular, the Court notes that there is insufficient evidence before it to conclude that Sussex or its clients were complicit in the fraud at the motion-to-dismiss stage.

4

only one year, and its failure to undertake all of the steps necessary to put the loans into effect, remained hidden from Sussex until HVB entered into the DPA. Compl. ¶¶ 17, 23. It claims that it relied upon the false representations of HVB, and paid approximately $4,051,355 in loan origination fees to HVB, which it would not have paid if it had known of HVB's true intentions. Id. ¶ 24. It also claims to have been exposed to damages and attorney fees as a result of lawsuits filed by its former clients, "but does not yet know the amount." Id. ¶ 25.

In the FAC, Sussex asserts three causes of action: (1) fraud for failing to properly fund the loans;(2) fraud for failing to have the intent to renew the loans; and (3) violations of RICO, 18 U.S.C. §§ 1961 et seq., based on predicate acts of mail and wire fraud. Id. ¶¶ 26-43. HVB has moved to dismiss the RICO claim.

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, the court need not accept as true legal conclusions couched as factual allegations. Ashcroft v. Iqbal,

129 S.Ct. 1937, 1949-50 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. With regard to well-pleaded factual allegations, the court should assume their truth, but a motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007).

When a plaintiff asserts a claim for fraud, including claims brought under RICO that are predicated on fraud, the plaintiff must plead its claims with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004). Such claims "must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994). This means that Plaintiffs must include "the who, what, when, where, and how" of the fraud. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations omitted).

> Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.

Bly-Magee v. California, 236 F.3d 1014, 1018 (9th Cir. 2001) (quoting In re Stac Elec. Sec. Litig., 89 F.3d 1399, 1405 (9th

1  Cir. 1996) (brackets in Bly-Magee).

## IV. DISCUSSION

HVB's Motion is based on several arguments for dismissal of Sussex's RICO claim. HVB asserts that the claim (1) is barred by RICO's four-year statute of limitations; (2) is barred by the Private Securities Litigation Reform Act ("PSLRA"); (3) fails because Sussex lacks standing to assert a RICO cause of action; and (4) fails to plead a RICO claim with sufficient particularity and fails to plead the requisite "continuity" of the purported pattern of racketeering. Mot. at 2. For the reasons described below, the Court finds that the third argument -- i.e., failure to plead with particularity -- is sufficiently strong to warrant dismissal, and that dismissal must be without prejudice.

### A. Statute of Limitations

HVB claims that Sussex's RICO claims are time barred. Id. at 6. Although RICO does not explicitly specify a statute of limitations, the Supreme Court has concluded that "the federal policies that lie behind RICO and the practicalities of RICO litigation make the selection of the 4-year statute of limitations for Clayton Act actions, 15 U. S. C. § 15b, the most appropriate limitations period for RICO actions." Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 156 (1987). In the Ninth Circuit, the "injury discovery" rule determines when the statute of limitations begins to run, meaning that "the civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." Grimmett

7

1  v. Brown, 75 F.3d 506, 511 (9th Cir. 1996).  In addition, a claim
2  may be dismissed pursuant to a statute of limitations only when
3  "the running of the statute is apparent on the face of the
4  complaint."  Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th
5  Cir. 2006).

6   The parties here disagree as to when Sussex became aware of
7  its injury.  HVB claims that, according to the FAC, "the benefits
8  of the CARDS transaction were 'eliminated' the moment HVB
9  terminated the CARDS loans."  Mot. at 7.  HVB uses this to argue
10 that Sussex was aware of the injury no later than October 2001,
11 when (according to the FAC) Sussex first learned that HVB would
12 not be renewing some of the CARDS loans.  HVB argues that the
13 statute began to run in 2001, and therefore expired in 2005, years
14 before Sussex filed this suit in 2008.

15   The Court does not agree with HVB's reading of the FAC -- at
16 least not at this stage of the litigation, where it must be
17 "construed in the light most favorable to the nonmoving party."
18 Cahill, 80 F.3d at 337-38.  This is because, according to the FAC,
19 the key feature of the CARDS transactions that enabled certain tax
20 benefits was the "intention" that the loans remain outstanding for
21 thirty years, rather than the actual amount of time that the loans
22 remained outstanding.  FAC ¶ 10.  According to the FAC, Sussex did
23 not discover until 2006 that HVB initially lacked the intent to
24 renew the loans.  Id. ¶ 23.  The FAC provides no additional facts
25 that would have put Sussex on notice that it had been injured
26 (i.e., that the tax benefits would not occur) before this time.

27   A complete statute of limitations defense does not appear on

the face of the FAC.[4]  The Court is quite willing to revisit the statute of limitations issue at a later time, particularly if evidence comes to light that Sussex was aware of facts that would have rendered HVB's actions fraudulent prior to the DPA.

### B. Whether the Claim is Barred by the PSLRA

Under 18 U.S.C. § 1964(c), which was amended by the PSLRA, a plaintiff asserting a RICO claim may not "rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities . . . ."  HVB points out that the FAC makes reference to one of HVB's programs, called "BLIPS," which also served as a basis for the DPA, and which the Ninth Circuit has held, in other contexts, to be actionable as securities fraud. Mot. at 10-11 (citing FAC ¶¶ 39-41; Swartz v. KPMG, LCC, 476 F.3d 756, 761 (9th Cir. 2007)).  Sussex responds by pointing out that CARDS alone is the basis for its damages, that it cannot bring any claims under BLIPS, and that it is not now bringing a claim for the purchase or sale of securities related to BLIPS.  Opp'n at 5-6.

HVB initially raised this objection when Sussex sought leave

---

[4] HVB cites Curtis, a recent decision of the Northern District of Georgia involving HVB's CARDS scheme, in which the court found that the RICO claim of a plaintiff (apparently a client of Sussex) was barred by the statute of limitations.  Mot. at 7-8.  However, the complaint in Curtis is not the complaint that is before this Court, and the current question is whether a defense appears on the face of the FAC.  The court in Curtis found that "Curtis alleges that early repayment destroyed the benefits it anticipated from the CARDS arrangement."  2007 U.S. Dist. LEXIS 94012 at *31.  In contrast, Sussex has identified critical passages of the FAC that demonstrate that the key benefit from the transaction may not have been destroyed by recalling the loans, as long as HVB possessed the intent to renew when it entered the transaction.  FAC ¶¶ 10-11.

9

1  to amend its complaint to include a RICO claim, and the Court then
2  ruled that "both the Complaint and the Proposed FAC focus on the
3  CARDS program.  It is not clear to the Court that the CARDS
4  program involved the purchase or sale of securities."  Docket No.
5  47 ("July 1 Order") at 4.  This remains true.  At present, the
6  Court does not read the FAC to include BLIPS as a predicate act,[5]
7  and thus Sussex is not "relying" on BLIPS to establish a violation
8  of RICO.  HVB has not made any further attempt to convince the
9  Court that CARDS involved the purchase or sale of securities.

### C. Whether Sussex Has Standing to Pursue a RICO Claim

HVB claims that Sussex lacks standing to bring its RICO claim.  Mot. at 15-21.  In particular, it claims that Sussex failed to establish that HVB's conduct was a proximate cause of Sussex's injury.  Id.  "To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation."  Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 972 (9th Cir. 2008).

Sussex is claiming that it was injured because it paid to HVB loan origination fees in the amount of $4,051,355 for CARDS transactions.  FAC ¶ 24.  According to Sussex, these were "fees

---

[5] Sussex has also urged the Court to adopt this reading.  It has stated that it may bring "evidence of [HVB's] actions regarding BLIPS as relevant to proving the wrongdoing in CARDS.  That is, indeed, all plaintiff is trying to do in its recitation of HVB's conduct regarding BLIPS."  Opp'n at 7.  If this is the case, then of course, Sussex cannot rely on BLIPS activities as predicate acts, for example, to demonstrate that HVB's activities extended beyond a one-year period.  See Part IV.D., infra.

10

obtained by fraud." Opp'n at 14. Although the FAC also lists a number of other injuries that were suffered by its clients (i.e., the profitability or tax benefits from the CARDS transactions), the injury that Sussex is claiming appears to be based upon the simple payment of money from Sussex to HVB, predicated on fraudulent statements made by HVB directly to Sussex (or so this Court now assumes). Based solely on the FAC, this injury is not necessarily derived from any injury suffered by Sussex's clients, or by any other party.[6] Consequently, Sussex can point to direct harm that is distinct from the harm that was suffered from its clients, or by the United States Government, as a result of HVB's fraud.[7] This is therefore not an appropriate case to apply the tests and inquiries cited by HVB, which are designed to determine whether a particular harm is proximate enough to confer RICO standing. See, e.g., Holmes v. Sec. Investor Prot. Corp., 503

---

[6] The Court notes that Sussex "received investment banking fees for the CARDS transactions from the clients and in turn paid [HVB] loan origination fees for loans ostensibly made by [HVB] to the clients." FAC ¶ 6. This could be read to suggest that Sussex is asserting damages that are based solely on fees received from its clients, which it would not have received in the first place but for HVB's fraud. Although the Court finds this to be a very strong inference, it remains a mere inference, and the FAC leaves some room for concluding that Sussex was in fact made worse off by HVB's fraud. It would therefore be inappropriate to conclude at this stage that Sussex lacks standing to pursue its RICO claim. If HVB can later show that Sussex's injury was, in fact, wholly derived from fees paid by Sussex's clients, or that Sussex was not made worse off by HVB's fraud, then this could substantially impair Sussex's ability to establish damages.

[7] In addition, the parties have not yet briefed, and this Court does not reach, the issue of whether the legal fees and damages that arise from the lawsuits filed by Sussex's previous clients were proximately caused by HVB's fraud. This claim for relief could potentially provide Sussex with a separate basis for standing.

11

U.S. 258 (1992) (plaintiff's purported injury was based on reimbursement to direct victims of RICO violation); Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137 (2008) (plaintiff's purported injury was based on unfair competition involving infringement of copyrights held by others). These tests are designed for situations in which a purported injury is derivative of injuries to another party. As articulated by the FAC, this suit does not involve derivative or passed-on harm. Rather, Sussex claims that it was a direct victim that suffered a unique harm.[8]

### D. Whether the FAC Pleads a RICO Claim With the Requisite Particularity

When Sussex requested leave to amend its original Complaint, this Court briefly addressed the issue of the FAC's sufficiency. July 1 Order at 4. At that time, the Court concluded that "HVB can prepare an adequate response to the RICO cause of action based on the allegations in the Proposed FAC relating to HVB's allegedly fraudulent involvement in the CARDS program." Id. at 5. The Court now revisits this issue in the context of HVB's Motion to Dismiss. The Court finds that HVB has identified several key defects with the FAC.

HVB points out that the FAC does not specify precisely how

---

[8] Although the Court now rejects HVB's attempt to argue that Sussex lacks standing because it was itself a coconspirator, see Mot. at 20, the Court does so only because there is insufficient evidence to establish this allegation upon a motion to dismiss. If it turns out that Sussex was in fact a coconspirator, then HVB may have recourse to other remedies for pursuing a suit without sufficient factual basis.

12

HVB "agreed to participate" in the CARDS program, or how it communicated that it would not "renew" the loans. Mot. at 15. Indeed, the FAC does not identify any specific meeting or document, and does not identify a single phone conversation or wired communication. As much of the FAC hinges on HVB's fraudulent portrayal of its "intent" to renew the loans under the CARDS program for thirty years, the Court finds it particularly problematic that the FAC never once suggests "the who, what, when, where, and how" of the communication of this "intent" to Sussex. C.f. Vess, 317 F.3d at 1106. Although Sussex can point to the DPA as convincing evidence that HVB has committed fraud, it does not establish conclusively that HVB committed this fraud upon Sussex. The Court will not read the DPA as a waiver of the pleading requirements of Rule 9(b) for all parties who were connected with the activities covered by the DPA. Even in these circumstances, Rule 9(b) requires Sussex to establish, with particularity, the factual basis for concluding that fraud was plausibly committed upon it, before it "unilaterally impos[es] upon the court, the parties and society" the costs of pursuing this fraud claim. See Bly-Magee, 236 F.3d at 1018. Presumably, Sussex is familiar enough with the facts underlying its allegations to cure this defect with minimal cost or effort.

HVB also argues that Sussex fails to allege a "pattern" of racketeering activity because the pattern is not "continuous" enough; i.e., it does not extend over "a substantial period of time." Mot. at 12 (citing H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 242 (1989)). HVB cites Religious Technology

13

Center v. Wollersheim, 971 F.2d 364, 366-67 (9th Cir. 1992), and claims that Sussex must plead predicate acts that take place over a period of not less than twelve months in order to constitute a pattern lasting a "substantial period of time." Id. HVB would read the FAC as alleging conduct lasting for about a year, beginning in October of 2000 (when HVB "agreed to participate as a lender to clients of [Sussex] in" CARDS) and ending in October of 2001 (when HVB "decided not to renew some of the loans"). Id. at 12-13 (citing FAC ¶¶ 6, 18). Should HVB amend the FAC, it can and should specify, to the best of its ability, the temporal boundaries of the predicate acts that underlie its RICO claims. If, in good faith, Sussex does not possess enough information to specify when the predicate acts began or ended, and must rely on the DPA for its inference that CARDS "continued over a course of years," FAC ¶ 41, then it should do so explicitly. Sussex may not plead that the predicate acts took place over the required "substantial period of time" by conclusory allegations alone. Based on these deficiencies, the Court GRANTS Defendants' Motion WITH LEAVE TO AMEND.

**E.  Motion to Strike**

HVB has requested that the Court strike paragraph 25 of the FAC, as well as Sussex's fourth prayer for relief. Mot. at 21-22. In these sections, Sussex states:

> As a result of Defendants [sic] actions, Plaintiff has been sued by a number of Clients and incurred expenses, including attorney fees in as yet an unknown amount. Plaintiff is also exposed to damages as a result of said lawsuits but does not yet know the amount and prays leave to amend when such amounts are determined.

14

1   FAC ¶ 25.

2       Sussex then prays for "the costs of defending lawsuits by
3   Clients and for any damages Plaintiff has to pay as a result of
4   said lawsuits that was caused by Defendants' fraudulent acts."
5   FAC at 13.  HVB points out that prospective or future contingent
6   damages are not actionable under RICO.  Mot. at 22 (citing <u>Walter</u>
7   <u>v. Palisades Collection, LLC</u>, 480 F. Supp. 2d 797, 804 (E.D. Pa.
8   2007)).  In response, Sussex insists only that it has a right to
9   recover fees incurred in cases that are certain at the time of
10  trial.  Opp'n at 18 (also citing <u>Walter</u>, 480 F. Supp. 2d at 804).
11  The Court agrees -- Sussex can recover prior expenses that can be
12  proven by the time of trial.  See <u>Burger v. Kuimelis</u>, 325 F. Supp.
13  2d 1026, 1036 (N.D. Cal. 2004).  Sussex is granted leave to amend
14  the FAC; if it chooses to do so, it must clearly state in any
15  prayer for litigation expenses that it is seeking only expenses or
16  costs that it can establish as a certainty by the time of trial,
17  excluding those barred by the statute of limitations.

19  **V.   CONCLUSION**

20      This Court concludes that, as alleged, the RICO claim is not
21  barred on its face by the statute of limitations, nor is it
22  precluded by the PSLRA.  The FAC also sufficiently alleges a basis
23  for standing.  However, the FAC fails to plead fraud with
24  sufficient particularity.  Sussex's third cause of action for
25  violation of the Racketeer Influenced and Corrupt Organizations
26  Act is therefore DISMISSED WITH LEAVE TO AMEND.  As certain issues
27  raised in this Order may relate to Sussex's first and second

15

1 causes of action for fraud, Sussex also has leave to amend these
2 causes of action.  If Sussex chooses to amend its complaint,
3 Sussex may file an amended complaint no later than thirty (30)
4 days from the date of this Order.

6     IT IS SO ORDERED.

8     Dated: September 23, 2009

                              UNITED STATES DISTRICT JUDGE