IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSSEX FINANCIAL ENTERPRISES, INC., | Case No. 08-4791 SC |
| Plaintiff, | ORDER DENYING MOTION TO DISMISS |
| v. | |
| BAYERISCHE HYPO-UND VEREINSBANK AG, a/k/a HYPOVEREINSBANK; HVB RISK MANAGEMENT PRODUCTS, INC.; HVB U.S. FINANCE, INC., f/k/a HVB STRUCTURED FINANCE, INC.; and DOES 1-100, inclusive, | |
| Defendants. | |

## I. INTRODUCTION

In its Second Amended Complaint ("SAC"), Plaintiff Sussex Financial Enterprises, Inc. ("Sussex"), alleges that Defendants Bayerische Hypo-und Vereinsbank AG, et al. (collectively, "HVB"), committed fraud in connection with the promotion and execution of a tax shelter scheme, and that HVB violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Docket No. 93. HVB filed a previous motion to dismiss Sussex's RICO claim, which this Court granted based upon Sussex's failure to plead the underlying fraud with the requisite level of particularity in its First Amended Complaint ("FAC"). See Docket No. 66 ("Sept. 24, 2009 Order") at

15-16. By its SAC, Sussex has attempted to remedy this and other deficiencies.

This matter comes before the Court on HVB's second Motion to Dismiss ("Motion"), which challenges not just Sussex's RICO claim, but also Sussex's two state-law fraud claims. Docket No. 105. Sussex has filed an Opposition, Docket No. 112, and HVB has filed a Reply, Docket No. 113. Having considered the briefing submitted by both parties, the Court concludes that this matter is appropriate for resolution without oral argument. For the reasons stated below, the Court DENIES HVB's Motion.

## II. DISCUSSION

The parties are familiar with the background of this dispute, which this Court recounted in its previous Order. Sept. 24, 2009 Order at 2-5. That Order also sets out the legal standards applicable to motions to dismiss pleadings that are based upon fraud. Id. at 5-7. The Court therefore picks up where it left off in its prior Order, and proceeds to the new arguments that HVB has leveled against the SAC.

### A. Whether the SAC Pleads Fraud with Particularity

In its previous Order, this Court concluded that:

> The FAC does not specify precisely how HVB "agreed to participate" in the CARDS program, or how it communicated that it would not "renew" the loans. Indeed, the FAC does not identify any specific meeting or document, and does not identify a single phone conversation or wired communication. As much of the FAC hinges on HVB's fraudulent portrayal of its "intent" to renew the loans under the CARDS program for thirty years, the Court finds it particularly problematic that the FAC never once suggests "the who, what, when, where, and how" of the communication of this "intent" to Sussex. . . .

United States District Court
For the Northern District of California

> Rule 9(b) requires Sussex to establish, with particularity, the factual basis for concluding that fraud was plausibly committed upon it . . . .

Id. at 12-13 (citations omitted).

The SAC continues to allege, like the FAC before it, that HVB acted as the lender in a program known as Custom Adjustable Rate Debt transactions ("CARDS"), and that "an intended and essential element of each CARDS transaction was the opportunity for the Clients to obtain a tax benefit. . . . All parties fully considered and understood the importance of the tax benefit in the design and proposed execution of the CARDS program." SAC ¶¶ 6, 9. The willingness of clients to participate in CARDS was dependent upon these tax benefits. Id. ¶ 13. However, these tax benefits were contingent upon the CARDS participants' intent that the loans at the heart of the CARDS program would last for thirty years; without this intention, the sought-after tax benefits would not meet the requirements of the Internal Revenue Code. Id. ¶¶ 11-14. In spite of its decision to act as lender in the CARDS program, HVB "had a hidden intention not to renew the loans after the original interest rate period (approximately one year) and failed to disclose this to" Sussex. Id. ¶ 16.

Sussex's SAC now includes a description of a series of presentations that took place between November 6 and November 8, 2000.[1] According to the SAC, the president of Sussex, Roy Hahn ("Hahn"):

> made presentations to the Financial Engineering

---

[1] The SAC actually states that this meeting took place "[b]etween November 6, 2009 through November 8 of 2000" -- the Court assumes that the 2009 date is a typographical error.

3

>subsidiary (hereafter "FNE") of HVB. . . . At such presentations, Hahn made clear that in order for a CARDS' transaction to be able to take advantage of the tax benefits, an investor had to have a legitimate business purpose in doing so. He also pointed out that the 'all in cost' of the loan had to be considered in determining whether or not a borrower had a legitimate business purpose and that the return on capital by the borrower had to exceed the 'all in cost' of the loan.

SAC ¶ 10. The SAC also names specific members of FNE who were at these meetings. Id.

According to the SAC, after one of the presentations, FNE co-head Dominick DeGiorgio sent an email to Hahn, stating that "our group feels as though we can commit the necessary resources to a group of CARDS transactions that need to be executed before year end." See Welch Decl. Ex. A ("DeGiorgio Email") at 1.[2] DeGiorgio also recounted that Hahn had stated in his presentation that the term of the loan would be thirty years, "possibly resulting in a prepayment of the entire facility after 12 months or at any 12

---

[2] Trevor J. Welch, counsel for HVB, submitted a declaration in support of the Motion, Docket No. 106, which attaches the DeGiorgio Email. The DeGiorgio Email can be considered in deciding this Motion without converting it into a motion for summary judgment, because "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). Sussex provides no support for its claim that this doctrine is restricted to public documents that are normally subject to judicial notice; indeed, courts often apply this doctrine to private correspondences and contracts between parties. See, e.g., Hutchinson v. Holder, No. 09-718, 2009 U.S. Dist. LEXIS 105579, *35 n.13 (D.D.C. Nov. 12, 2009) (considering email between plaintiff and employee of defendant); Doctors Med. Ctr. of Modesto v. Global Excel Mgmt., No. 08-1231, 2009 U.S. Dist. LEXIS 71634, *11 (E.D. Cal. Aug. 14, 2009) (considering letter between defendant and independent external review entity); Furman v. Walton, No. 06-3532, 2007 U.S. Dist. LEXIS 39618, *12-13 (N.D. Cal. May 16, 2007) (considering demand letter between parties).

month anniversary thereafter . . . ." Id. at 2.[3] However, Sussex claims that HVB never revealed its "hidden intention not to renew the loans," and therefore it was not clear that the tax benefits of the CARDS program would be unavailable or illegitimate. SAC ¶ 16.

HVB contends that these new allegations do not amount to a "promise to renew the loans under the CARDS program annually for 30 years," and recounts that the email expressly recounted the possibility that the loans may be prepaid after one year. Mot. at 8-9. This contention fundamentally misunderstands the premise of Sussex's fraud and RICO claims. Sussex is not asserting that HVB breached a contract by issuing the loans for thirty years and then unexpectedly unwinding the loans early; it is claiming that HVB participated in the CARDS program with an intention to unwind the loans in less than thirty years, even though it understood that its intention to issue thirty-year loans was necessary to allow Sussex's clients to enjoy the tax benefits that were the primary and essential purpose of the transactions. Although the DeGiorgio Email clearly shows that HVB expressly contemplated the possibility that the loans could be repaid in less than thirty years, given the context of the email -- including the Hahn presentations mentioned

---

[3] HVB has also submitted a sample credit agreement to illustrate the point that the parties contemplated that the loans may be unwound in less than thirty years. See Second Decl. of Trevor J. Welch, counsel for HVB, Docket No. 114, Ex. A. Sussex has objected to the submission of this document. Docket No. 122. HVB has submitted a motion to strike the objection and a motion to shorten time. Docket Nos. 125, 127. The Court finds that the exhibit was submitted in direct response to a characterization of the credit agreements made by Sussex. See Opp'n at 12. It therefore OVERRULES Sussex's objection, and HVB's Motion to Strike is DENIED as moot. However, the Court notes that the sample credit agreement does not alter the outcome of this Order. There is no question as to whether HVB had the right to unwind the loans in less than thirty years, see DeGiorgio Email at 2, and the conditions under which it could do so are not material to this Motion.

in the email and outlined in the SAC -- the email can be read as an assurance that HVB was willing to participate in CARDS in a manner that would allow the other participants to enjoy the mutually-understood benefits of the program (i.e., the tax benefits), and that HVB was not harboring an intention to unwind the loan after one year, even though it explicitly retained the right to do so. This reading is both plausible and, because the Court must read the SAC in the light most favorable to Sussex at this time, compulsory. See Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996) ("All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."). The Court therefore finds that Sussex has corrected the deficiency of the FAC by pleading specific meetings and correspondences between itself and HVB and its subsidiary. The SAC now identifies specific uses of wired communications, and provides "the who, what, when, where, and how" of the fraud. C.f. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

The DeGiorgio Email does not contradict HVB's position that "all of the parties to the [CARDS] transaction, including [Sussex], knew that the transaction was intended to be unwound after one year." Mot. at 10, quoting Curtis Inv. Co., LLC v. Bayerische Hypo-Und Vereinsbank, No. 08-14401, 2009 U.S. App. LEXIS 17469, at *6 (11th Cir. Aug 5, 2009). Nor does it conclusively prove this position. The Court is mindful of HVB's allegations that Sussex was a willing participant in all of the fraudulent aspects of the CARDS program, but this email does not strongly suggest this claim, nor does any other judicially noticeable document that is currently before this Court. HVB's arguments on this point are better suited

for summary judgment, or that failing, for trial before an appropriate fact finder.

HVB also argues that Sussex is impermissibly "lumping" multiple defendants together, without identifying the role that each defendant played in the alleged fraud, because the SAC names three related corporate entities and refers to them collectively as HVB. Mot. at 12. It is true that "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007). However, the Defendants who are "lumped together" by the SAC include HVB and two of its American subsidiaries, SAC ¶ 4, and each are represented by the same counsel. In this context, "lumping" the defendants together is arguably less likely to frustrate notice of the claims as to any particular defendant. More importantly, the SAC specifically identifies the HVB employees who were alleged to have participated in the wrongdoing, as well as the HVB division and subsidiary for which they worked. See SAC ¶ 10. The Court therefore finds that the SAC is sufficiently detailed to put each Defendant on notice of the claims against them, and to allow each Defendant to prepare its defense.

**B. Whether Sussex Has Plead All of the Elements of a RICO Claim**

The elements of a civil RICO claim include: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's

'business or property.'" Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c)). HVB claims that Sussex has failed to allege a valid "enterprise," "pattern," and "racketeering activity." Mot. at 13-21.

### 1. RICO Enterprise

18 U.S.C. § 1962(c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). It may include "a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583 (1981). However, "[t]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001).

The SAC alleges that the "enterprise" in question includes Bayerische Hypo-und Vereinsbank A.G., and two of its wholly-owned American subsidiaries, which are also named as Defendants in this suit, and 100 "Doe" defendants whom the SAC does not describe in any detail. SAC ¶¶ 4, 5, 44. HVB argues that an "enterprise" cannot consist of a company and its own subsidiaries, as these are not "distinct" entities, and HVB cannot be held liable under RICO

8

for having associated with itself. Mot. at 14-15. Although the Ninth Circuit has not decided whether a parent and its subsidiaries are sufficiently distinct to establish both a RICO "person" and "enterprise," "other circuits have decided that these entities generally are not sufficiently distinct." In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig., 601 F. Supp. 2d 1201, 1213-14 (S.D. Cal. 2009) (citing Bucklew v. Hawkins, Ash, Baptie & Co., LLP, 329 F.3d 923, 934 (7th Cir. 2003); Bessette v. Avco Financial Services, Inc., 230 F.3d 439, 449 (1st Cir. 2000); Fogie v. THORN Americas, Inc., 190 F.3d 889, 898 (8th Cir. 1999); Lorenz v. CSX Corp., 1 F.3d 1406, 1412 (3d Cir. 1993)). However, courts have considered companies to be parts of "enterprises" where allegations show that there is "something more" to suggest that the use of subsidiaries facilitated the unlawful activity, id. at 1214-15 (citing Bucklew, 329 F.3d at 934), or where employees operate with outside individuals, Living Designs, 431 F.3d at 361-62.

The Court finds that Sussex has sufficiently pled a RICO "enterprise" for the purpose of surviving a motion to dismiss. The Complaint specifically identifies particular individuals and subsidiaries within HVB -- DeGiorgio and FNE -- that drove the alleged fraud. SAC ¶¶ 10, 20-22. This is consistent with the DeGiorgio Email, which shows that DeGiorgio was operating within a distinctive and independent division within HVB, which had to maintain "a good working relationship" with other divisions that "remained skeptical" of certain portions of the transactions. DeGiorgio Email at 1. In particular, FNE had to operate with HVB's credit department to fund the loan. Id.; c.f. Countrywide, 601 F. Supp. 2d 1214-15 (finding "enterprise" where defendant used own

9

subsidiary to fulfill role of appraiser, thereby avoiding traditional checks). This is also consistent with the DPA, which suggests that DeGiorgio actually infiltrated and deceived HVB and its legitimate business operatives. DPA Ex. 1 ("Statement of Admitted Facts") ¶ 3.[4] Various courts have held that a corporation may serve as a RICO "enterprise" through which "persons" violate RICO. See <u>Comwest, Inc. v. American Operator Services, Inc.</u>, 765 F. Supp. 1467, 1475 (C.D. Cal. 1475) (collecting cases).

The SAC also indicates that DeGiorgio and FNE had to operate with Sussex as well as HVB's own legal counsel, and Sussex points out that it is "not prohibit[ed] . . . from including [itself] in a legitimate, albeit infiltrated, enterprise and [RICO] has not been interpreted to limit RICO enterprises to those persons engaged in the illegal conduct." <u>United Energy Owners Committee, Inc. v. U.S. Energy Management Systems, Inc.</u>, 837 F.2d 356, 360-61 (9th Cir. 1988) (citing <u>Sedima v. Imrex Co.</u>, 473 U.S. 479, 483-84, 497-98, 499-500 (1985)). The DPA confirms that HVB "engage[ed] in activity with others, including accounting firms, investment advisory firms, various individuals affiliated with those entities, lawyers, and clients . . . , all directed toward the implementation of the tax shelters designed to defraud the United States." Statement of Admitted Facts ¶ 2. The Court finds that the SAC sufficiently

---

[4] The Statement of Admitted Facts states that:
> Internally at HVB, DeGiorgio accurately described many aspects of the shelter transactions that should have led HVB to refuse to participate in the transactions. However, DeGiorgio also made false and misleading representations concerning the legitimacy of various transactions to HVB personnel. HVB's wrongful conduct is largely derived from the wrongful actions of DeGiorgio . . . .

Statement of Admitted Facts ¶ 3.

10

delineates between the "person" at issue and the "enterprise" that was utilized to further the alleged racketeering activity, for the purposes of defeating a motion to dismiss.

        2.    Racketeering Activity

HVB next contends that Sussex has failed to establish cognizable "racketeering activity," such as mail fraud or wire fraud. Mot. at 15-18. Specifically, HVB argues that wire fraud must include a "false representation," which "generally precludes any alleged 'fraudulent scheme' premised on an omission." Id. at 16. The Ninth Circuit has explained that "a non-disclosure can only serve as a basis for a fraudulent scheme when there exists an independent duty that has been breached by the person so charged. This independent duty may exist in the form of a fiduciary duty to third parties, or may derive from an independent explicit statutory duty created by legislative enactment." United States v. Dowling, 739 F.2d 1445, 1449 (9th Cir. 1984), rev'd on other grounds, 473 U.S. 207 (1985).

The Court finds HVB's reading of Sussex's allegations to be too narrow. Sussex is not alleging that HVB simply omitted the detail of its intention to unwind the loans after one year -- it is alleging that, in order to collect loan origination fees, HVB positively affirmed its willingness to participate in the CARDS program, which all participating parties understood to be premised upon an intention to issue loans that could last thirty years. See SAC ¶¶ 11-14; DeGiorgio Email at 2. This is sufficient to support an allegation of wire fraud; "deceitful statements of half-truths or the concealment of material facts and the devising of a scheme for obtaining money or property by such statements or concealments

is within the prohibition of the statute." United States v. Allen, 554 F.2d 398, 410 (10th Cir. 1977), cert. denied, 434 U.S. 836 (1977); see also United States v. Benny, 786 F.2d 1410, 1418 (9th Cir. 1986) (citing Allen with approval); United States v. Edmonds, No. 94-241, 1996 U.S. Dist. LEXIS 1973, *2-3 (D. Or. 1996) (allegations setting out facts necessary to make affirmative representations and promises not misleading are "allegations in support of affirmative, material misrepresentations").

### 3. Pattern

To plead a RICO claim, Sussex must allege "a series of related [predicate acts] extending over a substantial period of time." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 242 (1989). HVB argues that Sussex has failed to sufficiently allege a "pattern" of racketeering activity, since it does not allege "related acts" spanning a "substantial period of time." Mot. at 18-21. The Court disagrees. Sussex alleges that HVB engaged in at least twenty-nine similarly-structured transactions in or around late 2000, SAC ¶ 17, and that in 2002, HVB was marketing a product known as "RAFT," "which was the same program as CARDS but merely renamed and marketed to its own customers." Id. ¶ 26. Sussex further alleges that HVB "did not exit the CARDS program until sometime in August, 2003, when it closed the last two CARDS deals then on its books." Id. This is substantially more specific than the conclusory allegation in the previous FAC, which simply alleged that the fraudulent programs "continued over the course of years." FAC ¶ 41. The Court finds the allegations of the SAC sufficient to defeat a motion to dismiss.

///

12

**C. Sussex's Fraud Claims**

Although HVB did not challenge Sussex's two state-law fraud claims in its earlier motion to dismiss, and although Sussex did not significantly amend these claims in its SAC (except to include additional details to meet the particularity requirements of Rule 9(b)), HVB now challenges both of Sussex's fraud claims.

HVB first claims that Sussex has failed to plausibly allege that it reasonably relied upon HVB's alleged fraudulent misrepresentations and/or omissions. Mot. at 22-23. The Court disagrees, and concludes that the SAC sufficiently makes out a prima facie case for fraud. It would be inappropriate to conclude, at this stage of the litigation, that Sussex's reliance was unreasonable as a matter of law. Whether Sussex's reliance was reasonable is a question of fact. The mere fact that HVB explicitly contemplated the possibility that the loans would be unwound after one year, and the fact that it retained this right, do not render it unreasonable per se for the other CARDS participants to expect that HVB intended for the loans to last thirty years when it entered into the program.

Finally, HVB makes a series of challenges to Sussex's first cause of action. Mot. at 11 (quoting SAC ¶¶ 18-19). By this cause of action, Sussex alleges:

> On information and belief, Defendants failed to set up and fund the loans in individual accounts in the year in which the CARDS loans closed. On information and belief Defendants did not set up separate accounts for each loan until the Client proposed, and Defendants accepted, substitute collateral and the Client actually asked for use of the monies supposedly set aside for that particular Client. Such requests did not occur until the year following the date in which the Cards investment closed. Failing to set up the

13

>             loans in individual accounts as required, in the
>             year in which the transactions closed, negated
>             any possible tax benefits of the CARDS program.

SAC ¶ 18.

HVB argues that Sussex "does not even attempt to explain how the alleged failure to fund a particular CARDS account until the client posted 'collateral' and 'actually asked for use of the monies' could possibly be fraudulent." Id. HVB also challenges this claim on the basis that allegations made "on information and belief" generally do not satisfy the pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure. Mot. at 11. This is generally true. See Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993). However, Sussex's first cause of action amounts to a claim based on promissory fraud. "A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996). The crux of Sussex's allegation is that HVB made representations that it would set up the individual accounts contemplated by the CARDS program without possessing any intention to do so. SAC ¶¶ 31-32. Sussex need not plead with specificity that HVB had no intention of fulfilling this promise at the time it was made. See Fed. R. Civ. P. 9(b) ("[C]onditions of a person's mind may be alleged generally."). The Court finds that the SAC sufficiently describes what HVB promised, how that promise was false when made, and how that promise resulted in a frustration of the parties' objectives. The SAC's use of the phrase "upon information and belief," to qualify the allegation

that HVB did not ultimately provide these loans, does not deprive the allegations of their requisite particularity.

III. **CONCLUSION**

HVB has failed to persuade this Court that it would be appropriate to dismiss any of the causes of action set out by the Second Amended Complaint. Many of HVB's arguments -- particularly those relating to Sussex's own role in the alleged fraud -- are best suited for later stages of the litigation. At this stage, HVB's Motion to Dismiss must be DENIED.

IT IS SO ORDERED

Dated: January 6, 2010

UNITED STATES DISTRICT JUDGE